MAY TERM.
1842.

Duvall and others v. Raisin and others, defendants, and Blair & Archer, garnishees.

Duvall & others v. Raisin & others, Def'ts, and Blair & Archer, Garnishees.

1. The assent of creditors will be presumed to a deed of assignment made for their benefit, containing no stipulations or conditions prejudicial to their interests. Therefore, where such a deed was made for the benefit of certain preferred creditors, who were named as parties to the deed, but did not execute the same, their assent was presumed, they not being required to execute the deed before receiving the benefit of its provisions.

2. Endorsers are viewed by courts as creditors, and a deed of assignment made for their security is valid, although no payments had been made by them at the time of the execution of the deed.

3. The neglect or delay of the assignee in making out a schedule of assets and liabilities, referred to in the deed as part thereof, will not render the deed inoperative.

Error to St. Louis Court of Common Pleas.

Crockett for Plaintiffs.

Blair & Gantt for Defendants.

*Opinion of the Court, delivered by Napton, Judge.*

This was an action of assumpsit by Duvall, Keighler & Co., against H. H. Raisin & Co. An attachment was sued out, and Montgomery Blair and Edward E. Archer, summoned as garnishees; Blair & Archer denied all indebtedness, except such as might be considered as arising from a deed of assignment, made by H. H. Raisin & Co., to them as trustees, by which all the property of said H. H. Raisin & Co. was conveyed to them for the benefit of certain preferred creditors. This assignment was made 24th April, 1841, between Henry H. Raisin, Wiare D. Parsons and John Ward of the first part; Edward E. Archer and Montgomery Blair, of the second part; and the several other persons named in the instrument, creditors of H. H. Raisin & Co. of the third part. The assignment purported to convey all the property of H. H. Raisin & Co. to Blair & Archer, giving them full power and authority to disprove of the same upon a special trust, that after paying the expenses attending the

MAY TERM.
1842.

Duvall & oth-
ers v. Raisin &
others Defts.,
and Blair &
Archer Garni-
shees.

assignment, the trustees should apply the monies arising therefrom to the payment of several preferred creditors, enumerating them. This deed was executed by the parties of the first and second part, the assignors and the trustees and Blair, admitted that he had received under this deed, property and effects to the value of five thousand dollars, which he held for the trust purposes specified in said deed. It was specified in the deed, that schedules of the property and of the liabilities of the assignors were annexed to the deed; but, these schedules had not been made out, and were not in fact, attached to the instrument.

Upon this state of fact the judgment of the Court of Common Pleas was for the garnishees, and to reverse this judgment, a writ of Error is sued out.

There are several objections made to the validity of this assignment, which we will proceed to consider.

The assent of creditors will be presumed to a deed of assignment made for their benefit, containing no stipulations or conditions prejudicial to their interests. Therefore, where such a deed was made for the benefit of certain preferred creditors, who were named as parties to the deed, but did not execute the same, their assent was presumed, they not being required to execute the deed before receiving the benefit of its provisions.

1st. It is insisted that the deed is void, because it was not executed by the creditors. Had the creditors, named in the assignment as parties, been required to execute it before they could take the benefit of its provisions, their assent to the deed could not have been signified in any other mode. Ganard v. Lord Lauderdale, 3 Sim. R. 1. But where there is no stipulation for a release, or any other condition in the instrument, which is not for the benefit of the creditors, their assent will be presumed. 2 Story Eq. 302. Drake v. Rogers & Shreenbury, 6 Mo. R. 320. Deeds of this description are frequently made for the benefit of persons who are absent, and where they are clearly for the benefit of such persons, and no terms are imposed, no expression of the assent of the preferred creditors has been held necessary, in order that the legal estate should vest in the trustee. Brooks v. Marbury, 9 Wheat, R. p. 97.

Endorsers are viewed by courts as cred-

2nd. The persons preferred in this assignment were endorsers, and because there is no evidence that the notes of which they were endorsers had been paid, it is argued that they are creditors. The endorsers stand in the position of securities for the assignors, and it has never been questioned, but that money or property could have been placed in their hands to indemnify them against loss. Nor is any reason

perceived why property may not be transferred to a trustee for their benefit.

MAY TERM 1842.

Duvall & others v. Raisin & others, Def'ts, and Blair & Archer, Garnishees.

To hold an endorser not to be a *creditor*, would certainly be an effectual mode of nullifying all assignments in which preferences are given, as in all, or nearly all of them, the preferred creditors are the endorsers of the debtors, and it seems to be a prevailing opinion in society that they are not only creditors, but creditors that have the highest claims upon the debtor.

3rd. The neglect or delay in making out schedules, if such existed in this case, cannot render inoperative the deed of assignment. The assignee in such cases, may file in equity and compel a delivery of the books and securities. Keys v. Brush, 2 Paige, Ch. R. 312.

The court is of opinion that the assignment was valid, and the judgment of the Court of Common Pleas is therefore, affirmed.

itors, and a deed of assignment made for their security is valid, although no payments had been made by them at the time of the execution of the deed.

The neglect or delay of the assignee in making out a schedule of assets and liabilities referred to in the deed as part thereof, will not render the deed inoperative.

### Opinion of Tompkins, Judge.

I dissent from the court in this case, not because I believe it necessary to the validity of a deed of assignment, that the creditors for whose benefit it is made, should sign it, when they are not required by its terms to sign. The statute itself gives an attachment against a debtor's goods, when he has fraudulently conveyed, assigned, or removed his property, to hinder or delay his creditors. And nobody can doubt that the makers of this deed intended to hinder and delay the plaintiffs in this action, when they made the deed of trust to the garnishees. In the present case I see no reason to believe the existence of fraud, so far then as the garnishees have disposed of any of this property for the benefit of creditors, I am of opinion that their acts ought to be held valid; but, I cannot admit that the effects which they now have on hand, are not liable to be attached for the benefit of creditors not parties to that deed; for, most certainly, that property is still the property of the defendants, and the law considers it constructive fraud to dispose of proper-

MAY TERM, 1842.

Duvall & others v. Raisin & others, Def'ts, and Blair & Archer, Garshees.

ty so as to hinder or delay creditors. The very act of assigning property for the purposes of that deed, is an attempt to withdraw the property from the operation of legal process, and a trustee is appointed with powers to dispose of the property to whomsoever the defendants may prescribe, whether there be indebtedness or not. But the plaintiff has the privilege of going into a court of equity to disprove the claims of a multitude of creditors of the defendant, instead of dealing with the defendant himself. I do not dispute the right of a debtor to prefer one creditor to another ; it would be impractible to prevent him. But I contend that this right of preference must be limited to such creditors as are actually paid ; and that it is no payment of a debt to put property into the hands of an agent to sell it to raise money to pay such creditors. Good morals and sound policy, in my opinion, forbid such a practice. A man whose debt amounted to one hundred, or, even two hundred dollars, could not afford to compete with the number of creditors commonly provided for by such deeds.